1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  YAKINI DEANDRE BYRD,                    Case No.  1:19-cv-01343-ADA-HBK (PC)

12              Plaintiff,                  FINDINGS AND RECOMMENDATIONS TO
                                            DENY PLAINTIFF'S MOTION FOR
13        v.                                SUMMARY JUDGMENT AND GRANT
                                            DEFENDANT'S CROSS-MOTION FOR
14  F. SERRANO,                             SUMMARY JUDGMENT[1]

15              Defendant.                  (Doc. Nos. 60, 64)

16

17                                          FOURTEEN-DAY OBJECTION PERIOD

18

19

20        Pending before the Court is Plaintiff's motion for summary judgment filed October 5,

21  2021 (Doc. No. 60, "MSJ")  as supplemented on August 1, 2022 (Doc. No. 72) and Defendant's

22  cross-motion for summary judgment ("X-MSJ") filed November 4, 2021.  (Doc. No. 64).

23  Oppositions and replies were filed to both motions.  (Doc. Nos. 62, 65, 66, 67, 73).  Plaintiff also

24  filed a sur-reply to Defendant's reply.  (Doc. Nos. 69).  For the reasons below, the undersigned

25  recommends the district court deny Plaintiff's MSJ and grant Defendant's X-MSJ.

26

27  [1] [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
    (E.D. Cal. 2022).
28

# I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor. *Id.*

The court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014).  It may not weigh evidence or make credibility determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).  Conclusory or speculative testimony in affidavits and supporting papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007); *see* Fed. R. Civ. P. 56(c)(2).  Furthermore, the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in

evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory allegations unsupported by specific facts, will not be sufficient to avoid summary judgment.  *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And, where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

The undersigned has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  The omission to an argument, document, paper, or objection is not to be construed that the undersigned did not consider the argument, document, paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of issuing these Findings and Recommendations.

## II.  BACKGROUND

### A.  Operative Pleadings

Plaintiff, Yakini Byrd ("Byrd" or "Plaintiff"), a state prisoner, is proceeding pro se on his First Amended Complaint[2] ("FAC") filed pursuant to 42 U.S.C. § 1983.  (Doc. Nos. 47, 55).  Byrd alleges that Defendant F. Serrano ("Serrano" of Defendant), a correctional officer, violated his Eighth Amendment right by using excessive force when he shot him "in the head with a Block Gun" and violating a prison policy.  (Doc. No. 47 at 3).  Defendant Serrano filed an answer to Plaintiff's initial complaint.  (Doc. No. 28).  In his answer, Serrano asserted various affirmative defenses,  including qualified immunity.  (Doc. No. 28 at 2-3).  After discovery, both parties filed timely motions for summary judgment.

In summary, three inmates were attacking Byrd in the dayroom at California State Prison, Corcoran on May 24, 2018.  (Doc. No. 64-1 at 1; Deposition of Plaintiff at 45-48).  Serrano was

---

[2] The undersigned found the FAC contained the same allegations as the initial complaint but included an additional allegation that Defendant Serrano violated a prison policy.  (Doc. No. 55 at 1).  As a result, the previous screening order was adopted and Defendant Serrano chose to stand on his initial answer.  (Doc. Nos. 55, 56).

1   posted in the control booth above the dayroom at the time of the attack.  (Doc. No. 64-1 at 1).

2   Upon witnessing the attack, Serrano activated an alarm, retrieved a 40-millimeter launcher[3] that

3   was loaded with a sponge round, and issued verbal orders to the inmates to stop fighting.  (*Id.*).

4   Despite the verbal orders, the fighting did not stop, and Serrano fired the 40-millimeter launcher.

5   (*Id.*).  Byrd claims he was struck in the head by the sponge round which Serrano purposefully

6   fired at him.  (Doc. No. 47 at 3).

7            **B.  Plaintiff's Motion for Summary Judgment**

8            Plaintiff's original MSJ failed to contain a statement of undisputed facts.  (Doc. No. 60).

9   Plaintiff rectified this procedural error and submitted purported "Undisputed Material Facts."

10  (Doc. No. 72).  In response, Defendant notes that of the 26 undisputed facts Plaintiff offers, 21 of

11  those facts are either identical or "virtually identical" to the facts Defendant proffers in his motion

12  for summary judgment and do not support summary judgment in Plaintiff's favor.  (Doc. No. 73

13  at 7).  As to the other "facts," Defendant either denies the facts or points out they are unsupported

14  as Plaintiff does not cite to any evidence.  (*Id.* at 17-18).

15           Overall, Plaintiff's MSJ is disjointed.  To the extent discernable, Plaintiff argues (1) whether

16  Plaintiff was on the ground being kicked by other inmates when Defendant fired a sponge round is a

17  disputed fact; (2) the former magistrates judge screened the complaint and found it stated an excessive

18  use of force claim; and (3) Defendant acted unreasonably and thus is not entitled to qualified

19  immunity.  (Doc. No. 60 at 3-4).  In support, Plaintiff attaches the former magistrate's screening order

20  (Doc. No. 60 at 5-9); Defendant's Answer to Plaintiff's Complaint (*id.* at 10-14); a January 16, 2021

21  letter from the Penal Law Project with attachments (*id.* at 15-27); Plaintiff's own declaration attesting

22  to his problems sleeping and attempts at settlement (*id.* at 28-32); quoted "title 15 regulations" (*id.* at

23  33); excepts of "citation & quotes regarding dismissal" (*id.* at 34); and a summary of law regarding

24  excessive use of force, with certain cases underlined, law on administrative grievance provided by the

25  Prison Law Office (*id.* at 35-44).  Plaintiff further refers to, but does not attach, his medical records,

26

27  [3] The parties also refer to the 40-millimeter launcher as a "block gun" and have used the two terms interchangeably.  For purposes of uniformity, the undersigned will just use the term "40-millimeter launcher" in this Findings and Recommendations with the understanding that it means the same thing as

28  the term "block gun."

1   his administrative segregation placement related to the incident, and his incident report regarding the

2   use of force event.  (*Id*. at 29).

3         Defendant opposes Plaintiff's MSJ.  (Doc. No. 62).  Defendant points out Plaintiff's

4   statement that he was not on the ground when the sponge round was fired is not contained in

5   Plaintiff's declaration.   Thus, this statement, standing alone, is insufficient to create a "genuine

6   issue" of material fact.  The Court agrees.  The Ninth Circuit "has refused to find a 'genuine

7   issue' where the only evidence presented is 'uncorroborated and  self-serving testimony.'"

8   *Villarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v.*

9   *Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).  Further, as discussed below, even assuming

10   Plaintiff was struck with the sponge round, whether Defendant shot Plaintiff while he was on the

11   ground or not is not relevant as to whether the force was excessive or employed to maintain

12   security and order.  Plaintiff refers the Court to *Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001) as

13   to presumably support his contention that the force used was done maliciously.  (Doc. No. 60 at

14   36, underlining *Jeffers* case in footnote).  But *Jeffers* does not support Plaintiff's excessive use of

15   force claim.  To the contrary, in *Jeffers* the Ninth Circuit concluded that correctional officers who

16   fired a bullet during a riot that inadvertently struck a prisoner who was being stabbed during the

17   riot acted in good faith effort to maintain or restore discipline and not for malicious or sadistic

18   purposes.  *Id*. at 912.

19         Defendant also correctly notes that Plaintiff cannot rely upon the § 1915A screening order

20   to defeat summary judgment.  At screening, the court must assume the allegations of fact are true

21   and correct but at the summary judgment stage the court considers only the undisputed evidence.

22   *See* Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56 standards of review;  *see also Hignite*

23   *v.Felker, et al.,* Case No. 2:07-cv-732-DAD, 2010 WL 2772700 at * 10 (E.D. Ca. July 13,

24   2010)("Plaintiff's reliance on the court's screening order as a basis for opposing defendants'

25   motions for summary judgment is misplaced.").  Finally, the Court addresses the qualified

26   immunity argument below and finds CAL. CODE REGS. tit. 15 § 3268(f) is not applicable and does

27   not defeat Defendant's entitlement to qualified immunity.  Thus, as more fully developed below,

28   the undersigned recommends Plaintiff's MSJ be denied.

1          **C.  Defendant's Cross-Motion for Summary Judgment**

2          In support of his X-MSJ, Defendant submits a memorandum of points and authorities

3   (Doc. No. 64-1), a statement of undisputed facts (Doc. No. 64-2), Defendant's sworn declaration

4   (Doc. No. 64-3); and sworn declaration from deputy attorney general Howard Skebe (Doc. No.

5   64-4).  Defendant's X-MSJ also attaches the following exhibits: an affidavit from the custodian of

6   records; Plaintiff's medical report of injury or unusual occurrence (*id*.); excerpts from Plaintiff's

7   deposition (*id*.); and a *Rand* warning to Plaintiff (*id*. at 64-5).

8          Serrano argues he is entitled to summary judgment because Plaintiff can produce no

9   evidence that Serrano acted maliciously and sadistically to cause harm.  Plaintiff conceded at his

10   deposition that he had no previous interactions with Serrano, no evidence of Serrano's state of

11   mind at the time the sponge round was fired, and no evidence that Serrano intended to hit him as

12   opposed to the other inmates who were attacking Plaintiff.  (*Id*. at 64-1, at 9-12).  Further, Serrano

13   argues that there is no evidence that Plaintiff was struck by the sponge round and instead his

14   injuries were the result of the assault.  (*Id*. at 10-11).  In the alternative, Serrano contends that

15   even if the sponge round struck Plaintiff, he fired the sponge round in a good-faith effort to

16   protect Plaintiff during an emergency.  (*Id*. at 11).

17         Should the court determine that Serrano is not entitled to summary judgment on the basis

18   that there is no "triable issue of fact regarding Defendant's lack of the requisite state of mind,"

19   Serrano argues his use of force was not excessive but was reasonable under the *Whitley* factors.

20   (Doc. No. 64-1 at 12-13); *see Whitley v. Albers*, 475 U.S. 312 (1986).  Defendant contends the

21   undisputed facts show Plaintiff was in a potentially life-threatening situation and type of force

22   utilized—firing the sponge round—was necessary to protect Plaintiff and prevent further

23   escalation of violence in the day room.  (*Id*. at 64-1 at 13-17).

24         Finally, should the Court find a violation of the Eighth Amendment, Serrano claims an

25   entitlement to qualified immunity because "it would not have been clear to a reasonable officer

26   that his conduct was unlawful under the circumstances of this case."  (*Id*. at 19).  Defendant cites

27   to *Marquez v. Guiterrez* in which the Ninth Circuit, on similar facts, "held that 'a reasonable

28   officer could believe that shooting one inmate in the leg to stop an assault that could have

1   seriously injured or killed another inmate was a good faith effort to restore order, and thus

2   lawful.'" (*Id*. at 19-20) (quoting 322 F.3d 689, 693 (9th Cir. 2003)).

### 1.   Plaintiff's Opposition to X-MSJ

4      Plaintiff filed an opposition to Defendant's MSJ.  (Doc. No. 66).  Plaintiff attaches his

5   medical report of injury or unusual occurrence (Doc. No. 66 at 8)[4], and his own declaration in

6   support (*id*. at 10).  In his declaration, Plaintiff refers the Court to the incident report previously

7   included in Plaintiff's pleading filed on October 6, 2020.  (Id. at 5-6, 10).  Defendant does  not

8   object to the Court considering the incident report from Plaintiff's October 6, 2020 filing (Doc.

9   No. 40 at 4-16) as evidence in support of Plaintiff's opposition to Defendant's summary judgment

10   motion.  (Doc. No. 67 at 5).

11      Liberally construing Plaintiff's opposition, he argues there is a dispute of material fact and

12   the Court must resolve the matter in his favor as the non-moving party.  (Doc. No. 66 at 3).

13   Plaintiff also argues Defendant is not entitled to qualified immunity because he acted

14   unreasonably and violated CDCR Policy, CAL. CODE REGS. tit. 15 § 3268(f), by targeting

15   Plaintiff who was on the ground getting kicked.  (*Id*. at 4).  Plaintiff claims the incident report is

16   false and submits Defendant's malicious and sadistic state of mind is evidenced by his shooting

17   Plaintiff in the head while he was on the ground and being kicked by three other inmates.  (*Id*.).

18   Additionally, Plaintiff suggests Defendant harbored a negative view of him because he was a

19   mental health inmate prior to being moved to general population.  (*Id*. at 4-5).  Plaintiff also

20   asserts Defendant and other unidentified prison officials worked with the three inmates who

21   attacked Plaintiff to stage the incident just so Defendant could shoot Plaintiff.  (*Id*.).

### 2.   Defendant's Reply

23      In reply, Defendant argues Plaintiff failed to comply with Local Rule 260(b) and therefore

24   his opposition is defective.  (Doc. No. 67 at 2-4).  Defendant points out Plaintiff failed to file any

25   undisputed facts, failed to reproduce Defendant's statement of undisputed facts and failed to

26   dispute any facts.  Therefore, Defendant argues Plaintiff admits the facts are undisputed.  (*Id*. at

27

28   _____

   [4] Defendant included the medical report in his MSJ.  (Doc. No. 64-4 at 6, Exhibit C).

3). Indeed, in his supplemental filing, Plaintiff then admitted to most of these facts. (*See* Doc. No. 72).

Regarding Plaintiff's assertion that the incident report is false, Defendant counters Plaintiff fails to explain how the incident report is false or how Plaintiff's position on the ground is evidence of Defendant's malice and ill will. (Doc. No. 67 at 5). Defendant contends Plaintiff's argument concerning the alleged violation of CDCR Policy, CAL. CODE REGS. tit. 15 § 3268(f) is misplaced because the regulation applies only to discharging a firearm, not a 40-millimeter launcher that launches less than lethal projectiles. (*Id.* at 9). In response to Plaintiff's argument that the Eighth Amendment and CDCR policy required Defendant to wait until correctional officers on the floor intervened before he fired the 40-millimeter launcher, Defendant points to the California Code of Regulations which establishes "that there is no sequence or hierarchy of non-lethal force options that must be used in response to emergencies." (*Id.* at 10).

### 3.  Plaintiff's Sur-reply to Defendant's Reply

As an initial matter, the Local Rules provide for a motion, opposition and a reply. *See* L.R. 230. Nothing in the Local Rules and the Federal Rules of Civil Procedure permit, as a matter of right, a sur-reply. Plaintiff did not seek leave to file the sur-reply and Defendant did not seek to strike it. *See* docket. "[D]istrict courts have the discretion to either permit or preclude a surreply." *Thompson v. Gomez*, 2022 WL 866562, *2 (E.D. Cal. Mar. 23, 2022) (citing *JG v. Douglas Cnty. School Dist.*, 552 F.3d 786, 803 n. 14 (9th Cir. 2008) (other citation omitted). Because Plaintiff's sur-reply addresses Defendant's argument that his reply is defective, the undersigned finds good cause to permit the sur-reply and considers the arguments raised by Plaintiff therein.

### III.  ANALYSIS

As previously stated, the undersigned considers the entire record and deems only those facts true which are properly supported by evidence. The undersigned first addresses Plaintiff's excessive use of force claim and then turns to Defendant's assertion of qualified immunity.

### A.  Material Facts Regarding Excessive Use of Force Claim

Following a thorough review of the evidence submitted, the undersigned finds these

material facts are deemed undisputed, unless otherwise indicated:

- On May 24, 2018, the day of the incident, Defendant was a correctional officer at California State Prison Corcoran ("CSP-COR") and Plaintiff was an inmate at CSP-COR.  (Doc. Nos. 47, 64-3 at 1, 72 at 5, Deposition of Plaintiff at 45).

- Defendant was assigned as the 3C04 control booth officer and stationed in Building 4 at CSP-COR.  (Doc. Nos. 64-3 at 2 ¶ 4. 72 at 5).

- Defendant was stationed in a secure room, elevated above the C-Section dayroom, where he could observe the inmates and staff in the dayroom.  (Doc. Nos. 64-3 at 2 ¶ 5, 72 at 5).

- Control booth officers cannot leave their position in the control booth, even when there is an emergency, unless they are relieved by another correctional officer.  (Doc. Nos. 64-3 at 2 ¶ 5, 72 at 6).

- While at his position, Defendant was armed with a Ruger Mini-14 – a semi-automatic rifle loaded with .223 caliber rounds capable of lethal force.  However, the control booth also contained a weapon rack with a 40-millimeter launcher loaded with a direct-impact sponge round and an MK-46 – a cannister that dispenses an oleoresin capsicum (OC) spray with an approximate maximum effective range of 25-30 feet.  (Doc. Nos. 64-3 at 2 ¶ 6, 72 at 6).

- At the time the incident took place, there were around 26-35 inmates unsecured and uninvolved in the fight in the dayroom.  (Doc. Nos. 64-3 at 2 ¶ 7, 72 at 6).

- Before the alleged incident occurred, Plaintiff and Defendant did not personally know each other, nor were they familiar with one another. (Doc. No. 64-3 at 2 ¶ 3; Doc. No. 64-4 at 22-23; Doc. No. 72 at 7, Deposition of Plaintiff at 64-65)

- On May 24, 2018, Plaintiff retrieved his food tray in the day room and was walking towards the stairs leading up to the second level of cells in the housing unit, when an inmate walked up behind him and punched him in the back of the head.  The blow caused Plaintiff to drop his food tray.  Plaintiff turned and began to defend himself.  Then a second and third inmate approached and joined the attack on Plaintiff.  They

began to attack Plaintiff's head, face, and neck.  (Doc. No. 64-3 at 2 ¶ 8; Doc. No. 64-4 at 10-15, 20; Doc. No. 72 at 7; Deposition of Plaintiff at 45-48).

- Defendant immediately called for assistance from other correctional officers and activated his personal alarm device.  Defendant gave verbal commands instructing Plaintiff and three other inmates to stop fighting and to get down on the ground. Defendant also opened the yard door for responding correctional officers.  (Doc. Nos. 40 at 4, 10, 11, 12, 14; 64-3 at 3 ¶ 9; 72 at 7-8).

- Neither Plaintiff or his attackers complied with the alarm and continued to fight. (Doc. Nos. 40 at 4, 11, 12; 64-3 at 3 ¶ 9; 72 at 8).

- Defendant retrieved the 40-millimeter launcher from the weapons rack in the control booth in exchange for his Mini-14.  (Doc. Nos. 64-3 at 3 ¶ 10, 72 at 8).

- The 40-millimeter launcher fires a direct-impact, less lethal sponge round, an individual foam projectile designed to cause minimal injury.  (Doc. No. 64-3 at 3 ¶ 16).

- After retrieving the 40-millimeter launcher, Defendant returned to the C Section windows and proceeded to give several verbal commands for the inmates to stop fighting and get down; however, the inmates did not follow the commands and did not stop fighting.  (Doc. Nos. 64-3 at 3 ¶ 10; 72 at 8 Deposition of Plaintiff at 55).

- Defendant gave one final command for the inmates to stop fighting and get down. Defendant's final command was ignored.  (Doc. No. 64-3 at 3 ¶ 12).

- Defendant fired a single sponge round.  (Doc. Nos. 64-3 at 3 ¶ 12, 72 at 8).

- Due to the inmate's movement and the velocity of the round, Defendant was unable to see where the round struck.  (Doc. Nos. 64-3 at 3 ¶ 12, 72 at 9).

- Plaintiff felt a blow to his head while fighting but cannot identify the source.  Plaintiff did not see the sponge round impact anyone or anything and at the time did not know if he was hit by the sponge round.  (Deposition of Plaintiff at 62-63).

- Following the discharge of the sponge round, the inmates stopped attacking Plaintiff and assumed prone positions.  (Doc. No. 64-3 at 3 ¶ 13; Doc. No. 40 at 4-5, 11; Doc.

No. 72 at 9).

- Responding staff then secured all involved inmates and escorted them out of the building without incident.  (Doc. No. 64-3 at 3 ¶ 13; Deposition of Plaintiff at 51, 56-57).

- After the fight, Plaintiff received medical care and all of his injuries were documented as scrapes, scratches, cuts lacerations, and bleeding to his lips, nose, and forehead. (Doc. Nos. 64-4 at 6, 72 at 9; Deposition of Plaintiff at 70-71).

- Plaintiff did not receive a rules violation for the incident.  (Deposition of Plaintiff at 44-45).

**B.  Local Rule 260(b)**

Initially, the Court addresses Defendant's argument that Plaintiff's opposition is defective because he failed to comply with Local Rule 260(b).  As noted, the Ninth Circuit requires courts to give leniency to pro se inmates.  *See Soto*, 882 F.3d at 872 (9th Cir. 2018); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (holding that courts should liberally construe motions and pleadings filed by pro se inmates and avoid a strict application of summary judgment rules.).  Plaintiff's failure to strictly comply with Local Rule 260(b) is not a concession to Defendant nor is it grounds alone to grant Defendant's motion for summary judgment.  *See Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) ("A motion for summary judgment cannot be granted simply because the opposing party violated a local rule…") (citations omitted).  And Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment, and, while Plaintiff's operative complaint is short and concise, it does contain disputed facts.  *See Lopez*, 203 F.3d at 1132 n. 14; (*see generally* Doc. No. 47).  While Plaintiff did not strictly comply with the local rule, the undersigned notes he did dispute certain facts.  (*See generally* Doc. No. 66).  Further, Plaintiff supplemented his otherwise procedurally deficient MSJ with a statement of undisputed facts.  (Doc. No. 72).

**C.  Excessive Use of Force Under the Eighth Amendment**

Inmates who sue prison officials for injuries sustained while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or, if the claim is pursued by a

11

pre-trial detainee who is not convicted, under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520 (1979) (holding that under the Due Process Clause, a pre-trial detainee may not be punished prior to conviction). The Eighth Amendment protects inmates from inhumane methods of punishment and conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). When determining whether the force was excessive, the Court looks to the "*extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'*" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321) (emphasis added). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. When faced with an excessive use of force claims, courts must proceed with caution to avoid overly critiquing the decision of prison officials in hindsight who are confronted with a prison disturbance and must make decisions in haste and under pressure while balancing the "threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6; *see also Whitley*, 475 U.S. at 321-22.

## 1. Analysis of Excessive Use of Force

Based on the undisputed evidence of record, the undersigned finds no reasonable juror would find that there is a genuine dispute of material fact regarding Plaintiff's excessive use of force claim. As a result, the undersigned recommends that district court grant Defendant's X-

1  MSJ.

2  ### a.  The Need for Application of Force

3         That Plaintiff was the victim of an attack perpetrated by three other inmates and was

4  ambushed from behind on the day and time of the incident is not disputed by either party.  (*See*

5  Doc. No. 64-3 ¶ 8; Deposition of Plaintiff at 46-47, 51, 53); (s*ee also* Deposition of Plaintiff at

6  44-45) (acknowledging Plaintiff did not receive a rules violation report because he was deemed

7  the victim).  Plaintiff was hit on the head from behind with such force that he dropped his tray.

8  He was outnumbered during the attack and assumed a defensive posture during the attack.  At

9  some point Plaintiff was on the ground being kicked by his attackers.[5]  (*Id.*).

10         Given that correctional officers have a duty to protect prisoners from violence at the hands

11  of other prisoners, if Serrano had failed to take some action, he could have been liable for failing

12  to act.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Serrano had reason to believe there was a

13  need for an application of force because the fight constituted an emergency, Plaintiff was at risk

14  of serious bodily harm, and Serrano could not wait to act.  (*See* Doc. No. 64-3 at 3 ¶14, at 4 ¶ 17).

15         Plaintiff acknowledges there was a need to use force in order to stop the attack on him.

16  (*See* Doc. No. 66 at 4; Deposition of Plaintiff at 79, 97) (arguing that physical intervention

17  through force by the correctional officers on the floor in the day room would be appropriate).

18  Based on the undisputed evidence of record, there was a need for an application of force to

19  protect Plaintiff, who was at risk of serious bodily harm, because Plaintiff was ambushed,

20  outnumbered, on the floor and getting kicked.

21  ### b.  Extent of Injury Suffered by Plaintiff

22         Plaintiff claims he sustained a dent in his head from the sponge round; however, no

23  medical evidence supports this claim.  Plaintiff admits nearly all his injuries, besides blood

24

25  [5] Plaintiff's version of the attack changes throughout this action.  Plaintiff acknowledges in his reply that he was on the ground getting kicked but then also denies being on the ground getting kicked.  Despite

26  Plaintiff's different version of events, Defendant and other witnesses agree that Plaintiff was on the ground getting kicked before the 40-millimeter launcher was fired.  (*See* Doc. No 40 at 4-5, 11) (correctional staff

27  who witnessed the fight say Plaintiff was on the ground getting kicked); (*see also* Doc. No. 66 at 4) (Plaintiff says he was on the ground getting kicked) *c.f.* (Deposition of Plaintiff at 49, 51) (Plaintiff denies

28  being kicked).  For purposes of this order, Plaintiff recanting different versions of the fight does not constitute a genuine dispute of material fact.

coming from his lip, are documented on the medical report.  (*See* Deposition of Plaintiff at 71; *see also* Doc. No. 64-4 at 6; Doc. No. 66 at 8).  The only issue Plaintiff identifies with the medical report is that it did not document his injuries were caused by the sponge round.  (Deposition of Plaintiff at 71).  However, Plaintiff does not disagree that the extent of his injuries are documented in the medical report.  (*Id*.).  And the medical report identifies only the following injuries Plaintiff sustained as a result of the incident: abrasion/scratch, active bleeding, cut/laceration/slash, and pain on his head.  (Doc. No. 64-4 at 6; Doc. No. 66 at 8).  Nowhere does the medical report state Plaintiff sustained anything resembling a dent in his head.  (*See id*.) (confirming Plaintiff did not have a broken bone, bruise/discolored area, puncture, reddened area, skin flap, or other injury).  When asked by medical staff to explain the circumstances of the injury, Plaintiff replied, "no comment."  (*See id*.).  Thus, Plaintiff did not claim any of his injuries resulted from being struck by the sponge round.  Nor did he inform medical staff he had a dent in his skull.  (*See* Deposition of Plaintiff 71-73).  Further, Plaintiff admits he was never diagnosed with a skull fracture.  (Deposition of Plaintiff at 58, 63, 72, 78).  And he admits immediately after the attack did not know if he was hit by the sponge round.  (*Id*.).

Here, the extent of the injuries—abrasion/scratch, active bleeding, cut/laceration/slash, and pain on his head—even if not deemed minimal, do not reflect the type of injury that would be caused by being hit by the sponge gun and do not indicate the type of injury Plaintiff claims he sustained-—a dent in his skull.  The only evidence Plaintiff has to support his claim that he was hit from the sponge round is his own statement that he has a dent in his skull.  Plaintiff's claimed injury, however, is not documented in the medical report and is contradicted by his sworn deposition that all the injuries from the incident are documented in the medical report.  Consequently, there is no evidence that Plaintiff sustained a dent in his skull, or any other injury attributable to being struck by a sponge round.

### c.  Relationship Between the Need and Amount of Force Used

The Supreme Court cautions a court to restrain itself from critiquing, in hindsight, decisions made by prison officials who are confronted with a prison disturbance and required to make split-minute choices under the pressure of balancing "the threat unrest poses to inmates,

prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6; *see also Whitley*, 475 U.S. at 321-22. It is within this framework that the Court considers Plaintiff's challenge as to whether the type of force Serrano chose to utilize was reasonable. Plaintiff suggests Serrano instead should have used another form of force, such as first affording correctional officers on the floor to intervene and stop the fight instead of deploying his 40-millimeter launcher. (*See* Doc. No. 69 at 4-5).

Plaintiff concedes some type and amount of force was needed to stop the fight (i.e., to the extent he proposes it would be appropriate for correctional officers on the floor to intervene to stop the fight). (*See* Doc. No. 66 at 4; Deposition of Plaintiff at 79, 97). Plaintiff points out that correctional officers on the floor are armed with OC spray and batons. (*Id.*). Though Plaintiff does not explicitly state being struck by a baton would be an acceptable amount of force, he seems to suggest it is preferable to a sponge round.

Even if Plaintiff can prove that he was struck by the sponge round (not conceded), he fails to refute the uncontroverted evidence in the record that the amount of force utilized was not inappropriate.[6] Prison operations are unique in that they require the use of force as a "legitimate means for preventing small disturbances from becoming dangerous to other inmates or the prison personnel." *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

Here, the undisputed record evidence shows Plaintiff was engaged in a physical fight with three other inmates. Serrano attempted to temper the use of force by activating his alarm and giving multiple verbal warnings which Plaintiff heard. (*See* Doc. Nos. 40 at 4, 10, 11, 12, 14; 64-3 at 3 ¶ 9; *see also* Deposition of Plaintiff at 55). None of the inmates complied with Serrano's

---

[6] Regardless of whether the deployment of a sponge round was an appropriate use of force, there is no evidence Plaintiff was hit by the sponge round. (Deposition of Plaintiff at 72). Plaintiff admits he does not know where Serrano was aiming. (*See* Deposition of Plaintiff at 62-63, 92-93, 95). Plaintiff in his FAC does not offer any other facts or evidence, besides his own statement, that Serrano was specifically aiming at him and he was struck by the sponge round Serrano fired. (*See* Doc. No. 47; Deposition of Plaintiff at 99). Without any supporting evidence, Plaintiff's mere assertion that Serrano was aiming at him and struck him in the head with the sponge round, which is contradicted by Plaintiff during his deposition, is insufficient to avoid summary judgment. *See Arpin*, 261, F.3d at 922. Indeed, because it is undisputed that Plaintiff was engaged in a fight on the ground with three other inmates, it belies logic that Plaintiff was focused on Serrano's action in the tower at the very moment he deployed the sponge round. At most, Plaintiff surmises that Serrano aimed the sponge round at him, but suspicion is not fact and cannot create an inference that Serrano acted with an improper motive. .

15

orders to cease fighting.  At the time of the incident there were between 26-35 unsecured inmates as well as the correctional staff  in the dayroom.  After Serrano deployed one sponge round, the attack stopped and the inmates assumed prone positions.  (*See* Doc. No. 64-3 at 3 ¶ 13; *see also* Doc. No. 40 at 4-5,11-13).

The undersigned finds using the 40-millimeter launcher was a reasonable effort to restore order, gain compliance, and protect Plaintiff from further attack.  Serrano's use of the 40-millimeter launcher allowed him to specifically target the fight and avoid a potential negative impact to the 26-35 other unsecured inmates and correctional staff located in close proximity. (*See* Doc. No. 64-3 at 4 ¶ 17).  Based on these facts and circumstances, a reasonable officer in Serrano's position, could conclude that the 40-millimeter launcher was more appropriate than the use of OC spray which could have either been ineffective or impacted individuals not involved in the fight.  (*See id*.).  Furthermore, the undisputed evidence or record demonstrates that the use of force from firing a single sponge round was reasonable because it was a precise employment of force that mitigated the risk of escalating the violence with 26-35 other unsecured inmates in near proximity.  (*See id*.).  Thus, the undisputed evidence of record shows that the amount of force applied was appropriate to both stop the fight and protect Plaintiff from further harm by the other inmates and Serrano only deployed the force after his efforts to temper the use of force by activating his alarm and giving multiple verbal warnings failed.

### d.  Defendant Reasonably Perceived Threat

*Supra*, the undisputed evidence of record confirms Plaintiff was initially attacked from behind by one inmate and then two additional inmates joined in on the attack.  (*See* Doc. No. 64-3 at 2 ¶ 8, 3-4 ¶ 14).  Plaintiff admits this fact.  (Doc. No. 72 at 7, ¶ 13).  Serrano observed the fight and responded to an event requiring an immediate  response to not just protect Plaintiff but also to restore order and avoid widespread violence in the dayroom.  (Doc. No. 64-3 at 2 ¶ 8, 3-4 ¶ 14).

Plaintiff's argument on this element is inconsistent.  On the one hand, he concedes there was a need for force, but then argues Serrano acted maliciously and sadistically when he fired the 40-millimeter launcher.  (*See* Doc. No. 66 at 4-5; Deposition of Plaintiff at 79, 97).  Plaintiff also accuses Serrano of lying and claims he purposefully targeted him in a "set up."  (Doc. No. 66 at

4-5; Doc. No. 69 at 3; Deposition of Plaintiff at 65-67, 91-92). Liberally construing Plaintiff's opposition, Plaintiff suggests a reasonable officer would not have perceived him as a threat and fired the 40-millimeter launcher. (*See* Doc. No. 66 at 4). Plaintiff's argument is misplaced. As noted *supra*, the undisputed evidence of record shows Plaintiff was being attacked. Serrano perceived the threat not only to Plaintiff but to the incident escalating with the unsecured inmates and correctional officers in the dayroom because the attack on Plaintiff did not cease despite Serrano activating alarms and issuing commands. Based on the undisputed evidence of record, Serrano's perception of a threat necessitating the use of force was reasonable.

### e. Defendant Made Efforts to Temper the Severity of Force

*Supra*, the record demonstrates Serrano made multiple attempts to temper the severity of a forceful response. Serrano called for assistance from other correctional officers, activated his personal alarm device, and gave multiple verbal commands instructing Plaintiff and the other inmates to stop fighting and to get down on the ground. (*See* Doc. Nos. 40 at 4, 10, 11, 12, 14; 64-3 at 3 ¶ 9). Plaintiff admits he heard the verbal orders and neither he nor his attackers complied with Serrano's order. (*See* Deposition of Plaintiff at 55; Doc. No. 72 at 8, ¶15). The undisputed record evidence shows Serrano made efforts to temper the severity of a forceful response, but the inmates refused to comply with his verbal orders thereby necessitating he use the 40-millimeter launcher.

### f. No Malicious and Sadistic Intent by Defendant

Plaintiff posits Serrano targeted him because he was a mental health inmate and thus was negatively labeled, and "set up." (*See* Doc. No. 66 at 4-5; Deposition of Plaintiff at 65-67, 99). Plaintiff provides no facts or evidence that he was "set up." In his deposition, Plaintiff admits he has no evidence besides hearsay. (*See* Deposition of Plaintiff at 99-100). To the extent Plaintiff has corroborating hearsay evidence, he does not offer the names of any inmates or affidavits to support his allegations. (*Id.*; *see also* Doc. Nos. 66, 69, 99-100). Instead, he offers only his own statement that unidentified inmates told him to keep the fact that he received mental health treatment to himself because inmates who receive mental health treatment are physically attacked. (Deposition of Plaintiff at 67). There is no evidence that Serrano was aware of the fact that

1    Plaintiff previously had mental health treatment.  *Jeffers* makes clear that a plaintiff "must do

2    more than simply allege that the defendants acted with an improper motive in order to survive

3    summary judgment."  267 F.3d 895, 907.   A plaintiff "must put forward specific, nonconclusory

4    factual allegations that establish improper motive."  *Id.* (internal quotations and citations omitted).

5            Plaintiff next claims Serrano is "lying."  (Deposition of Plaintiff at 91-92).  But nowhere

6    in his FAC does Plaintiff allege Defendant is lying.  (*See generally* Doc. No. 47).  Plaintiff

7    appears to predicate his argument that Serrano is lying on his mistaken belief that Serrano

8    violated CDCR policy, which *ipso facto* demonstrates that Serrano acted maliciously and

9    sadistically.  (Deposition of Plaintiff at 91-92; *see also* Doc. Nos 47, 69 at 4-5).  Plaintiff's belief

10   that Serrano violated CAL. CODE REGS. tit. 15 § 3268(f) is erroneous.  Section 3268(c) defines use

11   of force options and explains that a less lethal weapon is "any weapon that is not likely to cause

12   death.  A 37mm or 40 mm launcher and any other weapon used to fire less-lethal projectiles is a

13   less lethal weapon" whereas "[a] lethal weapon is any weapon that is likely to result in death.

14   CAL. CODE REGS. tit. 15 § 3268(c)(4),(5).  A firearm is a lethal weapon because it is used to fire

15   lethal projectiles."  *Id.*  It is undisputed that Serrano fired a 40-millimeter launcher.  Based on 15

16   C.C.R § 3628(c)(4) and CAL. CODE REGS. tit. 15 § 3268(c)(5), Serrano fired a less lethal weapon,

17   not a lethal weapon.  As a result, Plaintiff's argument that Serrano violated CDCR policy and *ipso*

18   *facto* acted maliciously and sadistically, is unfounded.

19           Contrary to Plaintiff's assertions, there is no evidence that Serrano acted maliciously and

20   sadistically to cause harm to Plaintiff when he retrieved his 40-millimeter launcher and shot one

21   round.  A reasonable officer in Serrano's position could perceive a threat to Plaintiff based on the

22   attack by the three inmates.  Plaintiff and Serrano never interacted with each other prior to the

23   May 24, 2018 incident.  (Doc. No. 64-3 at 2; Deposition of Plaintiff at 64-65).  Prior to the

24   incident, Serrano did not know Plaintiff and had no opinion of him.  (Doc. No. 64-3 at 2).  In fact,

25   this was Plaintiff's first day in this yard at CSP-COR, therefore greatly minimizing any chance

26   Serrano had formulated ill-will to the extent that he would act maliciously or sadistically to cause

27   Plaintiff harm.  (Deposition of Plaintiff at 62).  Plaintiff has no evidence that Serrano had a

28   reputation for improper conduct to support any argument that Serrano acted in accordance with

such a reputation on May 24, 2018.  (Deposition of Plaintiff at 65).  Indeed, Plaintiff acknowledged that prior to the incident he only briefly interacted with Serrano on one prior occasion when Serrano delivered him his food tray.  (Deposition of Plaintiff 63-64).

The undisputed evidence shows Serrano acted in a good faith effort to restore order and protect Plaintiff and the other inmates and correctional staff in the dayroom.  Defendant reasonably believed that Plaintiff was at risk of serious bodily harm and he could not wait to act.  (Doc. No. 64-3 at 4 ¶ 17).  Plaintiff was ambushed as his first attacker struck him on the head from behind.  (Doc. No. 64-3 ¶ 8; Deposition of Plaintiff at 46-47, 51, 53).  Plaintiff was outnumbered and forced to assume a defensive posture.  (*Id*.).  Eventually, Plaintiff fell to the ground and his attackers started kicking him.[7]  (Doc. No. 66 at 4; Doc. No. 40 at 4-5, 11).  Furthermore, the attack occurred in the dayroom with 26-35 unsecured inmates and there was a risk that the attack could escalate into a fight involving the unsecured inmates.  (Doc. No. 64-3 at 2-3, 4 ¶ 17).  No reasonable juror would find based on the undisputed evidence that Serrano acted maliciously and with a sadistic intent at the time of the incident.

### g.  Conclusion

The undisputed evidence reveals Plaintiff was the victim of an attack perpetrated by other inmates.  The attack occurred in the dayroom occupied by approximately 26-35 unsecured inmates.  Defendant was located in the control booth supervising the inmates.  Defendant could not leave the control booth and had limited means to stop the attack.  Defendant made multiple attempts to stop the attack without using force, but Plaintiff and his attackers ignored those verbal commands.  An emergency existed. Plaintiff was at risk of serious bodily harm or even death if the fight was not stopped.  Defendant utilized force that targeted only those involved in the attack while mitigating any effect to the 26-35 unsecured inmates in the dayroom and other correctional

---

[7] Certain aspects of Plaintiff's version of the attack changes in his pleadings.  Plaintiff acknowledges in his reply that he was on the ground getting kicked but then also denies being on the ground getting kicked.  Despite Plaintiff's different version of events, Defendant and other witnesses state Plaintiff was on the ground getting kicked before the 40-millimeter launcher was fired.  (*See* Doc. No 40 at 4-5, 11) (correctional staff who witnessed the fight say Plaintiff was on the ground getting kicked); (*see also* Doc. No. 66 at 4) (Plaintiff says he was on the ground getting kicked) *c.f.* (Deposition of Plaintiff at 49, 51) (Plaintiff denies being kicked).

1    staff.  Defendant's use of force, firing one-sponge round, stopped the inmates' attack of Plaintiff.

2        Viewing the facts in the light most favorable to Plaintiff, the record contains no facts to

3    support any inference that Serrano's actions were not a good faith effort to maintain or restore

4    order or undertaken maliciously and sadistically for the purpose of causing harm to Plaintiff.  To

5    the contrary, Serrano attempted to protect Plaintiff during an attack by other inmates.  The record

6    contains no genuine dispute of material fact as to whether Defendant applied excessive force on

7    Plaintiff for malicious and sadistic reasons.  The facts in this case are similar to *Simmons v.*

8    *Arnett*, ___ F. 4th ___, 2022 WL 3906207 (9th Cir. August 31, 2022) (finding correctional

9    guard's decision to deploy three sponge rounds which hit an inmate who was being attacked and

10   caused leg fracture and other injuries was not excessive use of force under circumstances).  Based

11   on the foregoing, the undersigned recommends that the district court grant Defendant's X-MSJ.

12                          **IV.  QUALIFIED IMMUNITY**

13       Alternatively, Defendant argues he is entitled to qualified immunity as a matter of law.

14   The undersigned finds Serrano did not violate Plaintiff's Eighth Amendment rights.  Thus,

15   theoretically, the court need not determine whether Serrano is entitled to qualified immunity.

16   Because Ninth Circuit precedent has previously found a prison guard entitled to qualified

17   immunity under similar circumstances presented here, the undesigned provides an analysis for the

18   benefit of the district court should the district court prefer to decide the "clearly established"

19   question without having to resort with whether Plaintiff has shown a violation of the Eighth

20   Amendment.  *Pearson v. Callahan*, 555 U.S. 223 (2009)(if the court finds the law not established,

21   the claims may be dismissed without a decision as to whether the challenged conduct violates the

22   law); *K.J. v. City of San Diego*, No. 20-55622, 15 (9th Cir. 2022); *Simmons v. Arnett*, 2022 WL

23   3906207.

24           **A.  Applicable Law**

25       The doctrine of qualified immunity, which protects government officials exercising

26   discretionary functions from liability in a federal civil rights suit, should be decided at the

27   "earliest possible stage in litigation."  *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017)(citations

28   omitted); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  A government official is entitled to

                                        20

1    qualified immunity under Section 1983 unless (1) the officer violated a federal a federal statutory

2    or constitutional right, and (2) the unlawfulness of his conduct was "clearly established at the

3    time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *Harlow v. Fitzgerald*, 457 U.S.

4    800, 817018 (1982).  "Clearly established" requires a showing that the statutory or constitutional

5    question was "beyond debate," such that every reasonable official would understand that what he

6    is doing is unlawful.  *Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024,

7    1035 (9th Cir. 2018). This standard is  "demanding" and protects "all but the plainly incompetent

8    or those who knowingly violate the law." *Wesb*y, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475

9    U.S. 335, 341 (1986)). "[A] court typically should identify a case where an officer acting under

10   similar circumstances as [the defendant] was held to have violated the constitutional right at

11   issue." *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)).  "Even when no case is

12   'directly on point,' courts may compare relevant factors to determine whether every reasonable

13   officer should have known the conduct in question was unlawful." *Anderson v. Virga*, 2018 WL

14   1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d

15   938, 946-47 (9th Cir. 2017).  The plaintiff bears the burden of establishing that the right alleged

16   was clearly established.  *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

17              **B.  Serrano is Entitled to Qualified Immunity**

18              Relying on *Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir. 2003) and *Belton v. Miranda-

19   Mares*, 2020 WL 4435137 (C.D. Cal. Apr. 24, 2020), Defendant argues he is entitled to qualified

20   immunity.  (See Doc. No. 64-1 at 25-26).  Plaintiff attempts to distinguish the facts of his case

21   from the cases cited by Defendant but otherwise does not identify any relevant precedent to

22   dispute Serrano's entitlement to qualified immunity.

23              *Marquez* involved a shooting by a prison guard, Gutierrez, to stop a disturbance in a

24   prison yard. *Marquez*, 322 F.3d at 691.  Appellee Marquez claimed he was attacked by unarmed

25   inmates, but he took no violent action. *Id*.  Another inmate, J. Perez, was lying on the ground

26   while being kicked in the head by two other inmates. *Id*.  Marquez was purportedly about three to

27   four feet from Perez and reports that contrary to Gutierrez's statement, Perez was not

28   unconscious. *Id*.  Marquez also argued he was just a bystander and not involved in the fight,

despite Gutierrez's perception of the opposite.  *Id.* at 691-92.  Gutierrez was in a guard tower about 360 feet from the disturbance and he, along with another officer, gave verbal warnings.  *Id.*  The verbal warnings were disregarded.  When Gutierrez saw Perez on the ground, he again yelled for those involved in the disturbance to "get down" but was again disregarded.  *Id.*  As a result, appellant intentionally shot Marquez in the leg fracturing his femur.[8]  *Id.* The Ninth Circuit, in reversing the district court's rejection of qualified immunity explained:

> Even if Gutierrez's beliefs that Marquez was involved in the kicking incident and that Perez was in danger of serious harm were mistaken, he can still be entitled to qualified immunity.  A reasonable official standing where Gutierrez was standing—that is, in a tower located 360 feet away from the disturbance—could perceive that both Marquez and another inmate were kicking Perez and threatening Perez with serious injury or death, and that Perez was not capable of protecting himself, even if no kick was actually administered by Marquez.  The scenario may look different when gauged against "20/20 vision of hindsight," but we must look at the situation as a reasonable officer in Gutierrez's position could have perceived it.

*Id.* at 693 (citing *Saucier*, 533 U.S. at 205)(quoting *Graham v. Connor*, 490 U.S. 386, 396(1989)).

In *Belton v. Miranda-Mares*, the plaintiff, who had a physical impairment, was involved in a physical altercation with another inmate.  *Belton*, 2020 WL 4435137 at *3.  The defendant and other officers gave verbal commands ordering the plaintiff and the other inmate to stop fighting.  *Id.* at *3-*4.  Specifically, defendant yelled for the two to "get down" and "prone out" on the floor.  *Id.* at *4.  Defendant then fired a 40-millimeter sponge round at the plaintiff which struck his ankle, fracturing it.  *Id.*  The court granted the defendant's motion for summary judgment finding defendant entitled to qualified immunity and noted:

> …because there remains a dispute as to whether "a reasonable person would have known" that shooting an unarmed, disabled inmate with a high velocity sponge round for failing to cease "tussling" with another inmate; when no one else was involved; where the fight may have been brief and ended by the time the shot was fired; where there was no evidence of animosity by Defendant towards the plaintiff aside from the shooting; and other officers were physically seconds away, was excessive, the Court cannot conclude the right Plaintiff

---

[8] While the Ninth Circuit does not specify in *Marquez*, the court in *Avratin v. Bermudez* clarified Appellant Gutierrez shot Appellee Marquez with Mini-14 rifle using lead bullets.  420 F. Supp. 2d 1121, n. 1 (S.D. Cal. Jan. 4, 2006).  Unlike Defendant Serrano, Appellant Gutierrez used deadly force.  *Id.*

alleges Defendant violated was clearly established.

*Id*. at *15 (citations omitted).

Recently, the Ninth Circuit, on facts similar to the instant action, in addition to finding no Eighth Amendment violation, also found that the defendant guard was entitled to qualified immunity. *See Simmons v. Arnett*, 47 F.4th 927 (9th Cir. 2022). Like Serrano, the defendant guard "Arnett" was in a control booth when a fight broke out. Plaintiff inmate Simmons was signing up inmates for haircuts when gang associates were horse-playing" by punching and slapping another gang associate Murillo, who was bloody. After warnings from the guard, the scuffle stopped and Murillo climbed a set stairs to where Simmons was speaking with an inmate. Murillo first walked past Simmons but then abruptly turned around and hit Simmons on the head and continued to hit Simmons who did not hit back. Like Serrano, Arnett activated an alarm and issued orders to stop. Like Serrano, Arnett had access to a lethal semi-automatic rifle and a 40mm launcher that shot high-speed projectiles of plastic bodies and foam noses. Like Serrano, Arnett chose to deploy the 40mm launcher. Because Simmons was situated in front on Murillo, Arnett aimed and fired a sponge round at Simmons' legs. The shot broke Simmons' left leg but the fight did not stop. Unlike Serrano, Arnett then fired two additional sponge rounds hitting Simmons in the butt and thigh. Afterwards, other officers arrived and the inmates laid prone and stopped fighting. In affirming the grant of summary judgment on the basis that there was no constitutional violation, the Ninth Circuit further opined that Arnett also was entitled to qualified immunity because no caselaw put a correctional officer "on notice that using less-lethal force to break up a prison fight would violate an inmate's constitutional rights." *Id*. at 935.

The Court has identified other findings of qualified immunity on similar facts involving the use of a 40mm launcher to stop a fight. See *Phillips v. Trejos*, 2021 U.S. Dist. LEXIS 185866, 2021 WL 4353107, *11-12 (C.D. Cal. Sept. 10, 2021) and *Carbajal v. Raborn*, 2013 WL 3778788, *1 (C.D. Cal. Jul. 18, 2013).

Based on the undisputed evidence of record and the cases discussed above, in the alternative, the undersigned recommends the district court find Defendant is entitled to qualified

immunity.

Accordingly, it is **RECOMMENDED**:

Plaintiff's motion for summary judgment (Doc. No. 60) as supplemented (Doc. No. 72) be DENIED and Defendant's Motion for Summary Judgment (Doc. No. 64) be GRANTED.

### NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    October 18, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE